[Civil No. 1940.  Filed June 5, 1922.]

[207 Pac. 361.]

## MORNING GLORY MINING COMPANY, a Corporation, Appellant, v. FRANCISCO CAMPILLO BENDER, Appellee.

1. MASTER AND SERVANT—MINER BLASTING HELD NOT GUILTY OF VIOLATION OF STATUTE.—Where some of the holes which a miner had charged for blasting misfired, his return to them after a lapse of twenty' minutes from the lighting of the fuse for the° purpose of taking care of the next shift, according to custom, was not a failure to report .misfire holes to the mine foreman in violation of Civil Code of 1913, paragraph 4071, precluding recovery for injury by a blast occurring when he reached the holes.

2. TRIAL—ERROR IN USE OF WORD "EMPLOYEE" FOR "EMPLOYER" IN INSTRUCTION HELD NOT MISLEADING.—In an action by a miner under the employers' liability law for injuries received in blasting, an instruction containing the statement that under specified circumstances an employee may recover for injuries, whether the "employee" was to blame or not, in view of the fact that the instruction clearly showed that it was meant to be whether the "employer" was to blame or not, and a subsequent instruction that, in order to enable the employee to recover, the injury must be received by him without fault or negligence on his part, did not mislead the jury, and was not prejudicially erroneous.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz.  Samuel L. Pattee, Judge.  Affirmed.

Mr. Leslie C. Hardy, for Appellant.

Mr. S. F. Noon and Mr. A. A. Worsley, for Appellee.

McALISTER, J.—This is an action under the employers' liability law, in which the plaintiff seeks to recover damages for personal injuries suffered by him as a result of an accident, and from a judgment

---

1. On liability of master for injuries caused by unexploded charge left after blasting, see note in 48 L. R. A. (N. S.) 931.

for him in the sum of $15,000, and the denial of its motion for a new trial, defendant appeals.

· The complaint properly alleges a cause of action under the employers' liability law, but the answer denies that the injury was caused by an accident due to a condition of the occupation, and alleges affirmatively that it resulted from appellee's negligence in failing to obey and comply with the orders and instructions of the defendant regarding such occupation, as well as the laws of the state of Arizona prescribing the duties of one engaged therein, and from his failure to exercise ordinary care, caution, and prudence for his own safety.

Appellee, Francisco Campillo Bender, was employed by the Morning Glory Mining Company as a miner, and while in the discharge of his duties was injured on June 1, 1920, by a blast or explosion which threw rocks and dirt against his body, resulting in the total loss of his sight. The accident occurred in this way: At 3:35 that afternoon appellee and his partner, Francisco Torres, lighted the fuse in five holes which they had just charged for blasting, and immediately withdrew to a tunnel some three or four hundred feet away. Within five minutes thereafter they heard three explosions, but remained in their place of safety fifteen minutes longer waiting for the other two, and, not hearing them, returned to the holes at 3:55 in order, as appellee testified, to ascertain which two had missed, so they could "take care of the next shift," and just as they "got to the place the holes went off," with the result that both were injured, appellee suffering complete loss of both eyes. The evidence shows that Chris B. Wilson was foreman at the mine, and that he was known to appellee, who had been both hired and directed where to work by him.

The essential facts of the case are not disputed, hence it is a question of the proper application of the law. The assignments, with one exception, are based

on subdivision (e) of paragraph 4071, Civil Code of
1913, which provides that "misfire holes shall be re-
ported to the mine foreman, or shift boss, in charge
of the locality of such holes." It is contended that
under this statute it was the duty of appellee to re-
port the misfire holes to the foreman, and that his
failure to do so, being the proximate cause of the in-
jury, was negligence *per se* which prevents a recov-
ery. In substantiation of this proposition the fol-
lowing excerpt from volume 3, section 1278, of
Labatt's Master and Servant, is cited:

"There can be no question that, where a servant's
injury was proximately caused by the fact that he
was violating a statute or municipal ordinance, the
meaning and effect of which are perfectly clear, he
cannot recover damages. This doctrine is applied re-
gardless of the fact that the employer may have di-
rected his servants to violate the law, or may have
sanctioned the growth and continuance of a custom
which amounts to a contravention of the law."

It is true that it was appellee's duty to report to
the foreman or shift boss having charge of that part
of the work that two holes had misfired; but was his
return to them after a lapse of twenty minutes from
the lighting of the fuse in each hole, for the purpose
of taking "care of the next shift," a failure to com-
ply with the statute? We think not, because it is
clear from the evidence that fuse of the character of
the three-foot lengths used in each of these holes
burns at the rate of one foot per minute, and neces-
sarily each of these pieces would burn to the powder in
less than five minutes from the time they were lighted
if there was no defect in them, and a number of wit-
nesses experienced in mining testified that it is con-
sidered perfectly safe to approach misfire holes after
a lapse of twenty minutes, and that it is customary
for the miner to do this unless otherwise instructed
by his employer. In this case appellee testified that
no other instructions had been given him, and that

his purpose in returning was "to see which holes were missed" because that was "the customary thing to do to report missed holes to the next shift." By a personal inspection he could ascertain which holes had misfired, as well as the reason for the failure of the others, and also whether two had exploded simultaneously, leaving only one, and thus place himself in a position to give the next shift exact information. Instead of violating the statute, he was endeavoring to comply with it completely, and the fact that he did it in a way that was considered safe by those following that occupation and in compliance with the custom of the mining industry in that section relieves him from any charge of negligence.

It is claimed that it was error to admit testimony proving it to be the custom among miners to return to the locality of the misfire holes in twenty minutes because such a custom could not relieve appellee of his duty to comply with the statute. This contention, however, is disposed of by the statement just made that in returning to the holes appellee was not violating the statute, but attempting to gain, in the only way open to him, information which would enable him to perform his statutory duty in a satisfactory manner. The statute was enacted for the benefit of the next shift, not for those having knowledge of the situation, and the custom, instead of conflicting with it, in practice supplements it by enabling the workman to report more accurately the conditions.

The only other error complained of is the giving of the following instruction:

"It is unnecessary to go into the reasons for the passage of such a law, it is unnecessary to dwell upon the fairness or unfairness of such a law, but it is the law that under those circumstances that an employee may recover for injuries to his person while engaged in hazardous occupation, whether the employee is to blame or not, and that, under the facts shown by the evidence, is claimed to be one of those occupations."

The part objected to is the use of the word ''employee'' in the (sixth) line, which, it is claimed, conveyed to the jury the impression that under the employers' liability law an employee may recover for injuries to his person while engaged in a hazardous occupation whether he is to blame for the injury or not. The remainder of this instruction is in these words:

''The occupation is undoubtedly hazardous, and if other facts exist he is entitled to recover whether the employer is at fault or not. So the legislature has enacted this act to protect the safety of employees in hazardous occupations, such as mining, smelting, etc., and any employer, whether individual, association, or corporation, shall be liable for the death or injury, caused by any accident due to a condition or conditions of such occupation, or due to such occupation, of any employee in the service of such employer in such hazardous occupation, in all cases where such death or injury of such employee shall not have been caused by the negligence of the employee killed or injured.''

It is clear from a reading of the entire instruction that the word ''employer'' was intended, and that the jury must have so understood it. In the very next sentence the jury is told that the employee is entitled to recover whether the ''employer'' is at fault or not, and at the end of the instruction that the employer is liable, when the proper facts exist, in all cases where the death or injury shall not have been caused by the negligence of the employee killed or injured. In the succeeding instruction the statement is made that five things must be proven before appellee can recover, and the fifth is that the injury was received by him without fault or negligence on his part, and this idea is repeated several times in the instructions. What is meant by negligence of the employee as a defense is defined as follows:

''By negligence on his part is simply meant the want of ordinary care, as I have defined it, and in

order to bar a recovery it must be shown that it was his negligence that caused the injuries; but it must be proven by him, he must prove that the injury he received was not caused by his own carelessness or negligence.''

It is clear from the entire instructions that it was a mere *lapsus linguae* or slip of the tongue and that the jury could not have been misled by it. But, even if it did not understand that the reference was to the employer instead of the employee, appellant was not injured, because the evidence, which is undisputed, shows conclusively that under the custom prevailing in that section the injury was not due to appellee's alleged negligence in returning to the holes within twenty minutes after lighting the fuse, but that it resulted from an accident due to a condition of the employment. No facts are disclosed indicating that appellee was in any way to blame; hence the jury could not have been misled or appellant injured by it. If there had been any evidence pointing to the contrary, and it were not so plain that it was a mere slip of the tongue, which the jury understood, appellant might be able to argue this assignment with plausibility.

The judgment is affirmed.

ROSS, C. J., and FLANIGAN, J., concur.